USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/8/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PLUSGRADE L.P.,

Plaintiff,

-against-

ENDAVA INC., et al.,

Defendants.

1:21-cv-1530 (MKV)

**OPINION AND ORDER**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff brings this suit against Defendants for the alleged theft and misappropriation of its unique platform that allows airlines to offer seat upgrades to the highest bidding passenger. Specifically, Plaintiff alleges that the thirteen defendants misappropriated its trade secrets to develop, market, and sell a competing platform called Voyego. Plaintiff brings claims of copyright infringement, violation of the Lanham Act, misappropriation of trade secrets, unfair competition, tortious interference, and unjust enrichment against all thirteen defendants.

Defendants filed two separate motions to dismiss the complaint. One motion was filed by the two defendants who eventually sold their subsidiaries that had developed and owned Voyego, referred to as the "Seller Defendants."[1] The other motion was filed by the remaining "Non-Seller Defendants."[2] Both motions seek dismissal pursuant to: (1) Rule 12(b)(6), for failure to state a claim due to improper "group pleading"; (2) Rule 12(b)(2), for lack of personal

---

[1] The "Seller Defendants" include Comtrade Group B.V. ("Comtrade Group") and Comtrade Solutions Management Holdinška Družba D.O.O. ("Comtrade Management").

[2] The "Non-Seller Defendants" include: (1) Endava Inc.; (2) Endava plc; (3) Endava (UK) Limited ("Endava UK"); (4) Comtrade Digital Services Ltd. ("Comtrade Ltd."); (5) Comtrade CDS Digitalne Storitve, d.o.o. ("Comtrade DS"); (6) Comtrade Digital Services d.o.o. Beograd ("Comtrade Serbia"); (7) Comtrade Software Solutions GmbH; (8) Comtrade USA West Inc. ("Comtrade USA"); (9) Comtrade d.o.o. Sarajevo; and (10) Comtrade d.o.o. Banja Luka. The only defendant to join neither motion is Comtrade GmbH, which has been liquidated and no longer exists. *See* Non-Seller Br. at 1 n.2

jurisdiction with respect to all but the two "Domestic Defendants";[3] and (3) Rule 12(b)(3), for improper venue. For the reasons discussed below, the motions are granted for improper group pleading.

## FACTUAL BACKGROUND[4]

### I.  Plusgrade Creates a New Platform

Plusgrade L.P. ("Plusgrade" or "Plaintiff") is a Canadian limited partnership headquartered in Montreal. AC ¶¶ 11-12. Between 2009 and 2011, Plusgrade created software that could be used to partner initially with commercial airlines to maximize revenue from empty airline seats via upgrades (the "Plusgrade Platform"). AC ¶ 3. Specifically, the Plusgrade Platform allows airline passengers holding an existing reservation to submit bids to purchase an upgraded seat that would otherwise be empty. AC ¶ 105. The airline accepts whichever bids it determines will net the greatest amount of revenue. AC ¶ 105. The additional revenue generated by the upgrades is allocated between the airline and Plusgrade pursuant to terms agreed upon by the partners. AC ¶ 105. At the time that the Plusgrade Platform came to market, no other platform provided a similar service. AC ¶ 106.

---

[3] The "Domestic Defendants" include Endava Inc. and Comtrade USA. The "Foreign Defendants," by contrast, include CDS Ltd., Endava plc, Endava UK, Comtrade DS, Comtrade Serbia, Comtrade Software Solutions GmbH, Comtrade d.o.o. Sarajevo, Comtrade d.o.o. Banja Luka, Comtrade Group, and Comtrade Management.

[4] The Court draws its facts from the Amended Complaint [ECF No. 36] ("AC"). On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider materials outside of the pleadings, including accompanying affidavits, declarations, and other written materials. *See Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)). Defendants submitted the following in support of their motions to dismiss: the declaration of Terry Curtis Jr. [ECF No. 106] ("Curtis Decl."); the Declaration of Stephanie Lindemuth and accompanying exhibits [ECF No. 109] ("Lindemuth Decl."); and the Declaration of Michael S. O'Reilly and accompanying exhibits [ECF No. 113] ("O'Reilly Decl."). The allegations in the complaint are presumed to be true "to the extent they are uncontroverted" by the declarations submitted by Defendants, *MacDermid*, 702 F.3d at 727, and all factual disputes are resolved in the plaintiff's favor, *see DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

Plusgrade owns all copyright and other intellectual property rights in the Plusgrade

Platform, which it has spent millions of dollars developing and enhancing in the years since the

platform first launched.  AC ¶¶ 3-4.  As a result of these efforts, more than 70 airlines, cruise

lines, and other travel companies have partnered with Plusgrade to use the Plusgrade Platform.

AC ¶ 111.  To protect its trade secrets, Plusgrade and its partners enter into agreements that

prohibit the partners from sharing or disclosing Plusgrade's proprietary and confidential

information, including the functionality and source code of the Plusgrade Platform.  AC ¶ 6.

## II.      Defendants Develop a Competing Platform

Comtrade Group is a holding company that develops software products and provides

services through its corporate affiliates, referred to as "CDS."  AC ¶ 16.  CDS is comprised of

six entities, which have the same or substantially identical business purposes, and which work

together to provide services to clients in Europe and the United States.[5]  AC ¶¶ 18, 31, 80-81.

Prior to June 1, 2020, CDS was owned jointly by Comtrade Group and another entity

called Comtrade Management.  AC ¶ 36.  On that date, however, Comtrade Group incorporated

Comtrade DS to become the sole shareholder of CDS.  AC ¶¶ 38-40.  Comtrade Group also

incorporated Comtrade Serbia.  AC ¶ 41.  In August 2020, Comtrade Group and Comtrade

Management entered into a Share Purchase Agreement ("SPA") with Endava UK, through which

Endava UK acquired the "CDS Business"[6] and a platform called Voyego, which CDS had

launched in 2019.  AC ¶¶ 35, 43, 97.

Voyego provides the same service as the Plusgrade Platform, shares all of the same

features, and has identical back-end reporting tools.  AC ¶¶ 123-28.  According to Plaintiff, these

---

[5] "CDS" includes CDS Ltd., Comtrade USA, Comtrade Software Solutions GmbH, Comtrade GmbH, Comtrade d.o.o. Sarajevo, and Comtrade d.o.o. Banja Luka.  AC ¶ 17.

[6] "CDS Businesses" includes Comtrade Serbia, Comtrade DS, CDS, and Comtrade DS's subsidiaries.  AC ¶ 42.

similarities were no coincidence.  Rather, Plaintiff alleges that since April 2018, "CDS (and now the Endava Group[7]) have had an employee inside one of Plusgrade's airline partners, Aer Lingus, . . . and . . . either used that employee to misappropriate the Plusgrade Platform or collaborated with an inside source to obtain [propriety information] only available to Plusgrade's partners."  AC ¶ 119.  Plaintiff claims that after this theft, "Defendants have attempted to steal at least one of its airline partners (Aer Lingus)," AC ¶ 153, and that "Defendants . . . continue to benefit from their wrongful use of Plusgrade's confidential, proprietary, and trade secret information, without authorization or renumeration to Plusgrade."  AC ¶ 8.

## PROCEDURAL HISTORY

Plaintiff initiated this action by filing a Complaint against Endava Inc. and Comtrade Ltd. (the "Original Defendants").  [ECF No. 1] ("Compl.").  The Complaint asserted seven causes of action: (1) federal copyright infringement; (2) violation of Section 43 of the Lanham Act; (3) misappropriation of trade secrets under the Defend Trade Secrets Act; (4) misappropriation of trade secrets under New York common law; (5) unfair competition; (6) tortious interference with business relationships; and (7) unjust enrichment.  Compl. ¶¶ 48-117.

In response, the Original Defendants filed a letter seeking a pre-motion conference in anticipation of their motion to dismiss the Complaint.  Specifically, they argued that the Complaint should be dismissed pursuant to: (1) Rule 12(b)(6), for failure to state a claim due to improper group pleading; (2) Rule 12(b)(2), for lack of personal jurisdiction over CDS Ltd.; and (3) Rule 12(b)(3), for improper venue as to CDS Ltd.  [ECF No. 18].  Plaintiff opposed the anticipated motion and requested jurisdictional discovery.  [ECF No. 20].  The Court granted that request, permitting Plaintiff to depose the Director of CDS Ltd.  [ECF No. 21].  After the

---

[7] The "Endava Group" is defined broadly as including Endava UK and "its affiliates."  AC ¶ 43.

deposition, the Original Defendants filed their motion to dismiss the Complaint, presenting the same arguments that were previewed in their pre-motion letter.  [ECF Nos. 31, 32].

Plaintiff filed an Amended Complaint in response to the Defendants' pending motion. [ECF No. 36] ("AC").  The Amended Complaint asserts the same claims as the original complaint, but adds eleven new defendants—corporate parents, holding companies, and sister companies.  Two of the newly-added defendants, referred to as the "Seller Defendants," operate under the "Comtrade" corporate umbrella.  AC ¶¶ 36-43, 80-88.  The rest of the defendants, referred to as the "Non-Seller Defendants," include the ultimate parent in the "Endava" corporate structure, Endava plc, and nine of its direct and indirect subsidiaries, including CDS Ltd.  AC ¶¶ 57, 80.[8]

Defendants filed two separate motions to dismiss the Amended Complaint: one motion was filed by the Seller Defendants [ECF Nos. 104, 105] ("Seller Br."); the other by the Non-Seller Defendants [ECF Nos. 107, 108] ("Non-Seller Br.").  Plaintiff filed a single opposition [ECF No. 112] ("Opp."), and replies were filed by the Seller Defendants [ECF No. 115] ("Seller Reply") and the Non-Seller Defendants [ECF No. 116] ("Non-Seller Reply").

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the

---

[8] Endava Inc. and CDS Ltd. initially filed their own motion to dismiss the Amended Complaint.  [ECF Nos. 60, 61]. After that motion was fully briefed, however, Plaintiff served the rest of the Defendants, and the Court requested that Endava Inc. and CDS Ltd. withdraw their motion to dismiss without prejudice and file a new motion jointly with the other Non-Seller Defendants.  [ECF No. 100].

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Id.* (citing *Twombly*, 550 U.S. at 556).

Although Rule 8 of the Federal Rules of Civil Procedure "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Atuahene v. City of Hartford*, 10 F. App'x 3, 34 (2d Cir. 2001) (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)). A complaint fails to give fair notice when it "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct." *Id.* Such a deficient pleading is called improper "group pleading."

## DISCUSSION

Defendants move to dismiss the Amended Complaint for failure to state a claim due to improper "group pleading," for improper venue, and for lack of personal jurisdiction over all Foreign Defendants. The Court begins (and ends) its analysis with the group pleading defect, not only because that issue disposes of all claims against all defendants, but also because group pleading precludes a proper analysis of the personal jurisdiction and venue issues.[9]

Plaintiff's Amended Complaint fails to provide fair notice of which claims pertain to which defendants. Through its more than 200 paragraphs, it rarely specifies which defendant engaged in what conduct. Rather, most of the allegations ambiguously state that the alleged

---

[9] Generally, Courts address any challenge to personal jurisdiction before deciding the merits of the cause of action. *See In re Rationis Enters., Inc. of Panama*, 261 F.3d 264, 267-68 (2d Cir. 2001). The Second Circuit has explained, however, that "in cases such as this one with multiple defendants—over some of whom the court indisputably has personal jurisdiction—in which all defendants collectively challenge the legal sufficiency of the plaintiff's cause of action, [the Court] may address first the facial challenge to the underlying cause of action and, if [the Court] dismiss[es] the claim in its entirety, decline to address the personal jurisdiction claims made by some defendants." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 247 (2d Cir. 2012).

misconduct was carried out by "defendants," or by numerous defendants placed into makeshift

groups, including "CDS," "CDS Business," and the "Endava Group."  A variety of examples

taken from the Amended Complaint demonstrate why this method prevents each defendant from

being put on notice of the misconduct for which it is being accused.

The first allegation of misconduct concerns the theft of Plusgrade's proprietary

information.  Plaintiff alleges that this theft was carried out "around April 2018" when "CDS

(and now the Endava Group) had an employee inside one of Plusgrade's airline partners, Aer

Lingus."  AC ¶ 119.  The odd phrasing of this allegation, with the unusual parenthetical about

the Endava Group, unduly complicates things.  "CDS" and the "Endava Group" encompass at

least nine different entities, but it is not clear which one is alleged to have done what.  Most

problematically, it is unclear whether the Endava Group is alleged to have been involved in this

conduct, despite not having any relation with CDS before signing the SPA in 2020.  Moreover,

this allegation seems to exclude Comtrade Group and Comtrade Management, but that exclusion

does not appear to translate to other allegations, which refer vaguely and indiscriminately to

"Defendants."  *See, e.g.*, AC ¶ 7 ("Defendants, on information and belief, either planted an

employee inside one of Plusgrade's partners, Aer Lingus, or collaborated with an inside source to

copy and steal the Plusgrade Platform.").

In the next allegation of misconduct, Plaintiff claims that "Defendants have attempted to

steal at least one of its airline partners (Aer Lingus)."  AC ¶ 153.  "Defendants" are all lumped

together in this allegation, but it is unclear how that could be the case.  Because Plaintiff fails to

allege *when* an attempt to steal Aer Lingus occurred, it is impossible to know *which entity* might

be responsible.  If the alleged attempt occurred before the signing of the SPA, the Endava Group

could not possibly have been responsible.  And if it occurred after the signing of the SPA, neither

Comtrade Group nor Comtrade Management could be responsible.  Of course, it is possible that the attempt to steal Aer Lingus was a sustained effort, occurring both before and after the signing of the SPA.  But the salient point is that it is impossible to tell if that is what is being alleged, or which defendant allegedly did the poaching.

Plaintiff also uses group pleading as it relates to certain allegations connected to personal jurisdiction.  For example, Plaintiff alleges that "in misappropriating Plusgrade's confidential . . . information, CDS (*and now the Endava Group*) accessed or caused to be accessed a United States based server."  AC ¶ 120 (emphasis added).  Once again, it makes little sense why Endava Group would be included in this allegation, given that Plaintiff alleges that the initial misappropriation—and, as a corollary, the accessing of the server—occurred *before* the SPA was signed in 2020.  AC ¶ 119.  This is problematic because Plaintiff attempts to use the United States server as a link to establish personal jurisdiction over every Foreign Defendant, including the so-called "Endava Group."  *See* Opp. at 23 ("[T]he foreign Defendants purposefully availed themselves of the privilege of conducting activities within New York when they accessed U.S. based servers to steal the Plusgrade Platform.").  The Court simply cannot assess the jurisdictional argument based on such a non-particularized allegation, and Plaintiff has failed to make an adequate *prima facie* showing of personal jurisdiction with respect to each defendant. *See Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006).

As a final example, Plaintiff alleges that "[t]he marketing of the Voyego Product has been and continues to be expressly aimed primarily at New York and the United States."  AC ¶ 138.  The vagueness of this allegation precludes the defendants from determining which one supposedly marketed Voyego to New York.  This stymies the Court's ability to weigh Plaintiff's argument that "the foreign Defendants purposefully availed themselves of the privilege of

conducting activities within New York when they . . . directed Voyego's marketing to New York."  Opp. at 23.  In sum, the use of group pleading renders futile any attempt to address the issue of personal jurisdiction.[10]  *See In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) ("To allege personal jurisdiction over a defendant, group pleading is not permitted.").

Plaintiff attempts to justify its use of group pleading by alleging in the first paragraph of its Amended Complaint that "Defendants have used a *complex and confusing web of corporate entities and affiliates as an enterprise acting in concert*."  AC ¶ 1 (emphasis added).  But this is insufficient.  "The fact that two separate legal entities may have a corporate affiliation does not alter [the Rule 8] pleading requirement" that a defendant is entitled to notice of the claims brought against it.  *In re Aluminum Warehousing Antitrust Litig.*, No. 12-md-2481, 2015 WL 1344429, at *2 (S.D.N.Y. Mar. 23, 2015).  "In the absence of allegations that corporate formalities have been ignored, courts appropriately and routinely adhere to legal separateness." *Id.*  There are no allegations that corporate formalities have been ignored as between *each and every* defendant, such that all defendants may joined for the purposes of group pleading.  The existence of some overlapping officers and directors does not meet the mark.  *Cf. Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (explaining that the fact of overlapping directors "does not establish that the American subsidiary is a 'mere department' of the Japanese parent"); *J.L.B. Equities, Inc. v. Iocwen Fin. Corp.*, 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001)

---

[10] The use of group pleading also prevents the Court from addressing the argument based on improper venue. Plaintiff alleges that Endava Inc. and Comtrade USA—the Domestic Defendants—have their principal places of business in New York City, and that this allegation is sufficient to establish proper venue in this District.  AC ¶¶ 23, 75.  The Non-Seller Defendants contend such an allegation is insufficient to establish venue, however, because the Domestic Defendants have no connection to the alleged conduct.  Non-Seller Br. at 29.  But the connection (if any) that the Domestic Defendants have to the alleged conduct cannot be discerned under the current pleadings; and, thus, the venue issue cannot be resolved.

("It has been established that overlapping officers and directors are intrinsic to the parent

subsidiary relationship, and that they are not determinative as to whether the subsidiary is a mere

department of the parent." (internal quotation marks omitted)).

As a final line of defense, Plaintiff alleged that "[a]fter the acquisition of the CDS

Business on or about August 17, 2020, the Comtrade Group, Comtrade Management, the CDS

Businesses, and the Endava Group were all working together in such a manner that Plusgrade is

unable to determine which specific entity was performing the specific conduct at issue."  AC

¶ 118.  But this claim cannot justify Plaintiff's repeated use of group pleading throughout its

lengthy 217 paragraph complaint.  That allegation pertains only to events that occurred *after*

August 17, 2020, and thus fails to explain why, for example, the Amended Complaint repeatedly

ascribes to the Endava Group conduct that occurred *before* 2020.  Plaintiff further alleges that

Comtrade Group and Comtrade Management have only been providing "certain transitional

services" since the signing of the SPA (AC ¶¶ 94, 134), which belies the claim that it is

impossible to know which defendant might be responsible for specific conduct, such that they

must all be lumped together.  *See Redcell Corp. v. A.J. Trucco, Inc.*, No. 20-cv-18, 2022 WL

683007, at *8 (S.D.N.Y. Mar. 8, 2022) (explaining that "the Court need not accept or attempt to

reconcile inconsistent or contradictory allegations").

Ultimately, the use of group pleading in the Amended Complaint precludes each of the

thirteen defendants from knowing what conduct it is alleged to have performed and, thus, against

which allegations it must defend.  S*ee Monterey Bay Mil. Hous., LLC v. Ambac Assurance

Corp.*, 531 F. Supp. 3d 673, 728 (S.D.N.Y. 2021) (explaining that group pleading violates Rule

8(a) of the Federal Rules of Civil Procedure because it "fails to give each defendant fair notice of

the claims against it").  Unless defendants know what they are alleged to have done, they are

shadow-boxing.  An action cannot fairly proceed in that manner.

### CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss are granted and

Plaintiff's Amended Complaint is dismissed.  This dismissal is without prejudice, however, as

there is insufficient evidence to conclude that Plaintiff's group pleading was made in bad faith or

that any attempt to again amend the complaint would be futile.  The motion for oral argument

filed by the Non-Seller Defendants is denied.  [ECF No. 110].

The Clerk of Court respectfully is requested to close the Motions at ECF Nos. 104, 107,

and 110.

**SO ORDERED.**

**Date:   March 8, 2023**
      **New York, NY**
                                                   **MARY KAY VYSKOCIL**
                                                 **United States District Judge**